**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**DONALD BISHOP COOK, SR.,
Individually and on behalf of all
others similarly situated**                                           **PLAINTIFF**

                                                         1:18cv76-SA-DAS

**VS.**                                           **CIVIL ACTION NO:**_____

**MISSISSIPPI FARM BUREAU
CASUALTY INSURANCE COMPANY,
SOUTHERN FARM BUREAU LIFE
INSURANCE COMPANY, and
SOUTHERN FARM BUREAU
CASUALTY INSURANCE COMPANY**                          **DEFENDANTS**

**INDIVIDUAL, COLLECTIVE ACTION AND CLASS ACTION COMPLAINT
FOR DECLARATORY JUDGMENT AND DAMAGES**

**JURY TRIAL DEMANDED**

    **COMES NOW** Donald Bishop Cook, Sr., ["Cook"], individually and as representative of all persons similarly situated, and brings this action against Defendants Mississippi Farm Bureau Casualty Insurance Company, Southern Farm Bureau Life Insurance Company, and Southern Farm Bureau Casualty Insurance Company, an integrated enterprise that jointly employed Cook and employed and/or employs other similarly situated individuals, [hereinafter referred to collectively as "Farm Bureau"].[1]

---

[1] Cook was terminated by Farm Bureau in August of 2017. Accordingly, the past tense is used throughout this Complaint to refer to him and to other similarly situated Agency Managers who are no longer employed by Farm Bureau. However, this action is not intended to be limited to claims by former Agency Managers and includes and intends to include Agency Managers currently employed by Farm Bureau, as well as Cook and other former Agency Managers. Use of present and/or past tense throughout this Complaint (or failure to consistently use both tenses throughout this Complaint) is not intended and should not be taken as an intent to limit this suit to claims brought either just by former Agency Managers or just by current Agency Managers.

## INTRODUCTION

1.  This is a civil action for violations of the Fair Standards Labor Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* [hereinafter "FLSA"], and the Federal Insurance Contributions Act of 1935, as amended, 26 U.S.C. § 3101 *et seq.* [hereinafter "FICA"]. Cook brings the action on behalf of himself and on behalf of all individuals similarly situated who work or worked as an insurance Agency Manager for Farm Bureau pursuant to contract and are or were misclassified as independent contractors when, in fact, they are or were nonexempt employees.

2.  Cook brings this action on behalf of himself and on behalf of all of those similarly situated, seeking to recover payment of wages lost or unpaid back wages, reimbursement of the portions of FICA taxes they paid which should have been paid by Farm Bureau, liquidated damages, reasonable attorneys' fees, costs of prosecution of this action, and pre- and post-judgment interest.

3.  This case implicates Farm Bureau's policy of misclassifying employees as independent contractors in an effort to avoid overtime pay liability under the FLSA and withholding and payment obligations under the FICA. Farm Bureau misclassified Cook and others similarly situated and then required or permitted them to work as insurance Agency Managers in excess of 40 hours per week without paying or compensating them for their overtime hours. It also failed to withhold their portion of FICA taxes and to pay its 7.65% share of these misclassified employees' FICA taxes.

4.  In addition to misclassifying Agency Manager employees as independent contractors and requiring or allowing them to work in excess of 40 hours per week, Farm Bureau also refused or failed to keep proper records of hours worked as required by the FLSA, refused or failed to compensate Cook and other similarly situated for their overtime work at the applicable

overtime rate of pay, refused or failed to withhold the Agency Manager employees' portion of FICA taxes, and refused or failed to pay its 7.65% share of these employees' FICA taxes. Farm Bureau still continues these wrongful and unlawful practices, at the expense of and to the detriment of its Agency Mangers.

5. Farm Bureau's conduct violates the FLSA which requires employers to keep proper records of hours worked and to compensate nonexempt employees for their overtime work at a minimum rate of one and one-half times their regular rate of pay. See 29 U.S.C. § 207(a).

6. Farm Bureau's conduct also violates the FICA which requires employers to withhold FICA taxes on behalf of their employees and to pay its 7.65% share of their employees' 15.3 FICA tax obligations.

7. Cook, as the putative class representative, seeks certification of this suit as a collective and class action on behalf of all current and former misclassified Agency Managers of Farm Bureau Mississippi locations.

**THE PARTIES**

8. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

9. Cook resides at 115 CR 79 in Houston, Chickasaw County, Mississippi. Cook worked for Farm Bureau for 41 years. He first began working for Farm Bureau as an insurance agent in Chickasaw County, Mississippi in or about 1976. He was promoted to the Agency Manager upon the retirement of Evans Dendy in 1978 and remained so employed until Farm Bureau wrongfully terminated him on August 2017. During all applicable times, Cook regularly worked as an Agency Manager in excess of 40 hours per week. However, Farm Bureau misclassified him as an independent contractor in an effort to avoid liability under the FLSA and the FICA and refused or failed to pay him overtime pay and likewise refused or failed to pay its portion of

Cook's FICA taxes.  Copies of Cook's Agency Manager Contract executed on July 1, 2004, Agency Manager Contract executed on January 5, 2017, and Agency Manager Evaluation executed on January 26, 2017 are attached hereto, respectively, and incorporated by reference as Exhibits "1," "2," and "3."  A copy of Cook's Consent to Sue form will be filed separately.

10.  Defendant Mississippi Farm Bureau Casualty Insurance Company is a Mississippi Corporation.  It may be served with process through service upon its registered agent, Steve W. Ingram, 1800 East County Line Road, Ridgeland, Mississippi 39157.

11.  Defendant Southern Farm Bureau Life Insurance Company is a Mississippi Corporation.  It may be served with process through service upon its registered agent, Joseph A. Purvis, 1401 Livingston Lane, Jackson, Mississippi 39213.

12.  Defendant Southern Farm Bureau Casualty Insurance Company is a Mississippi Corporation.  It may be served with process through service upon its registered agent, Steve W. Ingram, 1800 East County Line Road, Ridgeland, Mississippi 39157.

## JURISDICTION AND VENUE

13.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

14.  This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because claims arise under the FLSA and the FICA, 28 U.S.C. § 1337 (jurisdiction over civil actions arising under any Act of Congress regulating commerce), 29 U.S.C. § 216(b) (jurisdiction over action to recover liability prescribed under the FLSA), 26 U.S.C. § 3102(b) (creating implied private right of action under the FICA to compel employer to correct its share of FICA contributions), 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act), and Rule 57 of the Federal Rules of Civil Procedure.

15. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the FLSA claims occurred within this district.

**ENTERPRISE AND JOINT EMPLOYMENT**

17. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

18. The Farm Bureau Defendants are an integrated enterprise, and some or all of them jointly employed Cook. See, e.g., Exhibit "1" at ¶ 1 (indicating that Cook's Agency Manager Contract was with both Southern Farm Bureau Casualty Insurance and Mississippi Farm Bureau Casualty Insurance Company).

19. The Farm Bureau Defendants constitute a single enterprise under 29 U.S.C. § 203(r) because they are an integrated enterprise and/or perform related activities for a common business purpose. There is an interrelation between their operations, and they have common management, common ownership or financial control and centralized control of labor relations. All three Farm Bureau Defendants had control over employment practices and decisions related to Cook and to others similarly situated. They continue to have control over employment practices and decisions related to Agency Managers.

20. Farm Bureau's general provision regarding indebtedness, in its Agency Manager's contracts, is a good example of the integration of the Farm Bureau entities and the integration of its operations and practices. There, Farm Bureau gave itself:

> the right to withhold payment of any or all compensation due hereunder for a period of time sufficient to give the [Farm Bureau] Companies the opportunity to

5

determine the existence and amount of any indebtedness due, or claimed to be due from You [the Agency Managers] to the Companies, to ___any___ Farm Bureau organization, or to other companies.

<u>See</u> Exhibit "1" at p. 4, ¶4.A. and Exhibit "2" at p. 5, ¶ 4.A.

21.  All three Farm Bureau Defendants engaged (and continue to engage) in activities related to soliciting, selling and servicing insurance policies under the Mississippi Farm Bureau aegis.  All three Farm Bureau Defendants utilized (and continue to utilize) the same agency force for the soliciting, selling and servicing of their insurance products in Mississippi.

22.  The Farm Bureau Defendants worked (and continue to work) together to offer insurance products and services under a single Farm Bureau identity.

23.  The Farm Bureau Defendants shared (and continue to share) a unified, advertising mark (logo) which was established in 1988 to serve all participating companies.  They also shared (and continue to share) a brand positioning statement, "Helping You is What We Do Best."

24.  The Farm Bureau Defendants jointly utilized (and continue to utilize) a shared method of compensating Agency Managers.  <u>See</u> Exhibit "1" at three-page attachment entitled "Agency Manager Schedule 1 Statement of Commissions for Agency Managers Contracted with Mississippi Farm Bureau Mutual Insurance Company, Mississippi Farm Bureau Casualty Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company" [hereinafter referred to as "Agency Manager Schedule 1"].

25.  The Farm Bureau Defendants, formally or as a matter of practice, jointly determined, shared or allocated the ability to direct, control and supervise Cook and other misclassified Agency Managers, by both direct and indirect means.  They continue to jointly determine, share or allocate the ability to direct, control and supervise other misclassified Agency Managers.

26. By way of example, Farm Bureau Agency Managers managed and supervised (and continue to manage and supervise) Farm Bureau Agents for the sale of all product lines sold by the Farm Bureau entities. In turn, the Vice President of Sales managed and supervised (and continues to manage and supervise) the Agency Managers and was (and continues to be) responsible for all of the marketing efforts such as advertising and sales promotions for all product lines sold by the Farm Bureau entities. See excerpt from Henry Hamill's LinkedIn profile, attached hereto and incorporated by reference as Exhibit "4" (wherein Henry Hamill, a VP of Sales for Mississippi Farm Bureau represents that, as VP of Sales, he is responsible for managing roughly 320 agents and 10 staff members and also for all marketing efforts such as advertising and sales promotions).

27. The Farm Bureau Defendants, formally or as a matter of practice, jointly determined, shared and/or allocated the power, directly or indirectly, to hire and fire Cook and other misclassified Agency Managers or to modify the terms and conditions of their employment.

28. For example, Cook and other misclassified employees were subject to employment-related agreements with Farm Bureau whereby Farm Bureau misclassified them as independent contractors. These agreements required them to follow guidelines, instructions and rules contained within Farm Bureau's rate books, compliance manuals, guidelines and other documents, all of which were subject to change at Farm Bureau's sole discretion. See, e.g., Exhibit "1" at p. 2, ¶ 2.F. The same agreements reserved Farm Bureau's right to terminate Cook and the other misclassified employees. Farm Bureau continues to utilize these practices with regard to Agency Managers throughout the state of Mississippi.

29. The relationships between the Farm Bureau entities are permanent and longstanding.

30. The Farm Bureau entities operate subject to common management, supervision and control.

31. Cook and other misclassified Agency Managers' day-to-day experience was that Mississippi Farm Bureau was their employer. They, along with supervisors and agents, were considered to be working for "Mississippi Farm Bureau." The Farm Bureau Defendants managed Cook and other misclassified Agency Managers concerning all lines of Farm Bureau insurance sold, including all Mississippi Farm Bureau lines as well as casualty and life lines sold by Mississippi Farm Bureau Casualty Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company. Farm Bureau still continues these practices with regard to its Agency Managers.

32. The Farm Bureau Defendants paid Cook and other misclassified Agency Managers (and continues to pay other misclassified Agency Managers). They also supplied Cook and Agency Managers (both past and current) with facilities, computers and office supplies which Cook and other Agency Managers similarly situated used for all of their work for Farm Bureau, including soliciting, selling and servicing policies issued by each of the Farm Bureau companies.

## FLSA AND FICA COVERAGE

33. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

34. Cook brings this Complaint as a collective and class action, alleging violations of the FLSA the FICA on behalf of himself and all similarly situated individuals. The putative class is defined as:

> All individuals who, through a contract or agreement with Farm Bureau, perform or performed as Agency Managers for Farm Bureau and who were classified by Farm Bureau (or, rather, misclassified by Farm Bureau) as "independent contractors" anywhere in the state of Mississippi at any time from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join in this action.

The putative class also includes Cook, and he reserves the right to modify this definition prior to conditional certification of the putative class.

35. Cook, along with current and former misclassified Agency Managers of Farm Bureau, are similarly situated in that they have or had substantially similar job requirements and pay provisions and are or were subject to Farm Bureau's common practices, policies and/or plans controlling their daily job functions.

36. At all material times, the Farm Bureau entities were employers within the meaning of the FLSA and the FICA. See 26 U.S.C. § 3121(h) and 29 U.S.C. § 203(d).

37. The Farm Bureau entities controlled the nature, pay structure, and employment relationship with Cook and all Agency Managers similarly situated.

38. The Farm Bureau entities have and/or had the authority to hire and fire Agency Managers; the authority to direct, supervise and manage the work of Agency Managers; the authority to sign on the companies' checking accounts, including payroll accounts; and the authority to make decisions regarding Agency Managers' compensation and capital expenditures.

39. Additionally, Farm Bureau was responsible for the day-to-day affairs of the Farm Bureau agencies. In particular, it was responsible for determining whether it complied with the FLSA and the FICA.

40. As such, Farm Bureau acted directly or indirectly in the interest of the employment of Cook and other Agency Managers (both former and current) as their employer, which makes it liable under the FLSA and the FICA.

41. Furthermore, at all material times, Farm Bureau has been an enterprise engaged in interstate commerce or in the production of goods or services for interstate commerce because they have or have had employees engaged in interstate commerce.

42. The Farm Bureau entities acted in related activities performed through a unified operation and common control for a common business purpose (i.e., to solicit, sell and service insurance policies under the Mississippi Farm Bureau aegis).

43. The Farm Bureau entities have had, and continue to have, an annual gross volume of sales made or done of not less than $500,000.00. See 29 U.S.C. § 203(s)(1).

## COLLECTIVE ACTION ALLEGATIONS

44. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

45. Cook brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) (and other applicable statutes, laws and common law) on his own behalf and on behalf of the putative class described hereinabove.

46. Cook does not bring this action on behalf of any executive, administrative or professional employee exempt from coverage under the FLSA.

47. A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the Agency Managers described are "similarly situated" to Cook. The employees on behalf of whom Cook brings this collective action are similarly situated because they have been or are employed in the same or similar positions; they were or are subject to the same or similar wrongful and unlawful practices, policies and/or plans; and their claims are based upon the same legal theories.

10

48. Cook estimates that the collective class, including both current and former Agency Managers over the relevant period, will include well over 100 members. The precise number of collective class members should be readily available from a review of Farm Bureau's records and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

49. Cook's and the putative class members' entitlement to overtime pay and reimbursement of FICA expenses, except for the amounts, are identical and depend on one uniform factual question regarding whether, as a matter of economic reality, Cook and the putative class members are or were reliant on Farm Bureau to earn a living or are or were in business for themselves.

50. Similarly, the classification status of Cook and the putative class members involve an identical legal question regarding whether Farm Bureau's Agency Managers acted as employees, and not independent contractors, such that Farm Bureau owed (and owes) them a minimum wage, overtime and record-keeping obligations under the FLSA and reimbursement for FICA expenses under the FICA.

51. Cook and the putative class members share the same interest in that the outcome of this action will determine whether they were (or are) either independent contractors or employees under the FLSA and the FICA. Because the facts in each case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## CLASS ACTION ALLEGATIONS

52. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

53.  Cook also brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a putative class defined hereinabove.  Cook reserves the right to amend the putative class definition as necessary.

54.  Farm Bureau regularly permitted and required Cook and members of the putative class to work more than 40 hours per week without overtime compensation.

55.  Upon information and belief, Farm Bureau knew that Cook and all similarly situated individuals performed work that required overtime pay.

56.  Farm Bureau refused or failed to withhold its Agency Managers' portions of their FICA obligations and refused or failed to pay its own 7.65% share of its Agency Managers' 15.3% FICA obligations.  Farm Bureau knew or should have known that it was responsible and liable for proper withholding and payment under the FICA.

57.  Farm Bureau has operated under a scheme to deprive its misclassified Agency Managers of overtime compensation by failing to properly compensate them for all time worked.  It has deprived them of payment of half of their FICA obligations as required by the FICA.

58.  Farm Bureau's conduct, as set forth in this Complaint, was willful and has caused significant damage to Cook and all similarly situated individuals.

59.  Cook shares the same interests as the putative class members and will be entitled to overtime compensation, reimbursement of FICA expenses, liquidated damages, reasonable attorney's fees, costs of prosecution of this action, and pre- and post-judgment interest owed to him under nearly identical factual and legal standards as the remainder of the putative class.

60. The putative class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant time period, Farm Bureau employed a number of persons in all or nearly all 82 counties in Mississippi who were all subjected to working as Agency Managers without being paid overtime pay and while being required to pay the entire 15.3% FICA taxes rather than only their 7.65% share. The precise number of class members should be readily available from a review of Farm Bureau's records and from input received from the putative class members.

61. The putative class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, the Farm Bureau Defendants engaged in a common course of conduct and practices that violated (and continue to violate) the legal rights of Cook and the putative class members. Any individual question Cook's claims present will be far less central to this litigation than the numerous and material questions of law and fact common to the class, including but not limited to: whether Cook and the other putative class members, as a matter of economic reality, were or are reliant on Farm Bureau to earn a living or were or are self-reliant and independent; whether Cook's and the other putative class members' work was an integral part of Farm Bureau's business of soliciting, selling and servicing insurance policies; whether Cook's and the other putative class members' managerial skills affected their opportunity for profit or loss; how Cook's and the other putative class members' investments into the business compared to Farm Bureau's investment into the business; whether the relationships between the parties (Cook and the putative class members on one hand and Farm Bureau on the other hand) were (and are) indefinite and on-going or whether they were fixed and project-based as

typical of independent contractors; and the nature and degree of Farm Bureau's control over the Agency Managers.

62. The statuses of all individuals similarly situated to Cook raise an identical legal question: whether Farm Bureau's Agency Managers acted as independent contractors or employees to whom Farm Bureau owed or would owe a minimum wage, overtime, record-keeping obligations, and tax obligations under the FLSA and the FICA.

63. The putative class meets the typicality requirement of Rule 23(a)(3) because Cook and the putative class members were all employed by Farm Bureau pursuant to Agency Manager Contracts and performed their services without receiving overtime wages owed for their work and without receiving the benefit of Farm Bureau paying half of their 15.3% FICA tax obligations.

64. The putative class meets the fair and adequate protection requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Cook and the putative class members, and because counsel for Cook is knowledgeable and experienced in the field of employment law, can and will fairly and competently represent the interests of all class members, and has and will commit the human and financial resources necessary to adequately represent all class members. Furthermore, counsel for Cook has conducted significant investigation as to potential claims and parties in this case.

65. The putative class meets the predominance requirement of Rule 23(b)(3) because issues common to the class predominate over any questions affecting only individual members including but not limited to whether Farm Bureau's Agency Managers were (and are) improperly classified as independent contractors and whether

Farm Bureau, through its employment policies and practices, exercised control over the manner in which the class members worked.

66. The putative class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve their controversy through a class action would permit a large number of similarly-situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort or expense that numerous individual actions would require.

67. Even if each class member could afford to litigate a separate suit, this Court should not require the filing and prosecution of possibly one hundred or more identical actions, given the material similarity of the putative class members' claims. Separate lawsuits of the legal and factual issues raised by Farm Bureau's conduct and practices would cause unavoidable delay, a significant duplication of efforts, and a waste of resources. Alternatively, allowing the claims to proceed by way of a single class action would permit the efficient supervision of the putative class members' claims and would create significate economies of scale for the Court and all parties involved, resulting in uniform, binding adjudication of all issues.

68. This action can be efficiently and effectively managed by sending the same FLSA and FICA opt-in notice to all employees similarly situated.

69. Farm Bureau is liable under the FLSA and the FICA for failing to keep proper records of hours worked as mandated by FLSA, for failing to properly compensate Cook and the other putative class members, and for failing to pay its half of their FICA obligations, and notice of this lawsuit should be sent to all similarly situated individuals.

Those similarly situated are known to Farm Bureau and are readily identifiable through Farm Bureau's records.

## FACTS

70.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

71.  Cook and all similarly situated individuals have all been victimized by Farm Bureau's common policy and plan to violate their rights under the FLSA and the FICA by refusing or failing to keep proper records, denying them proper overtime compensation and refusing or failing to pay its half of their FICA obligations.

72.  Farm Bureau operates a business enterprise of soliciting, selling and servicing insurance and insurance-related products and services including auto insurance, homeowner's insurance, renter's insurance, manufactured home insurance, farm & ranch insurance, property insurance, health insurance and life insurance.

73.  Cook and the other putative class members were (and are), as a matter of economic reality, reliant upon Farm Bureau to earn a living.  They were neither self-reliant nor independent.

74.  Cook's and the other putative class members' work was (and is) an integral part of Farm Bureau's business.  Their services were integrated into Farm Bureau's business operation of soliciting, selling and servicing insurance products, which is consistent with an employee classification and not an independent contractor classification.  See, e.g., Exhibit "1" at p. 1, ¶ 2.B.

75.  Cook's and the other putative class members' investments into Farm Bureau Agencies was (and is) miniscule compared to Farm Bureau's investment.  Farm Bureau's

investments in the infrastructure designed to underwrite, administer and pay claims of insurance products sold by Cook and other putative class members far exceed any investment by them.

76. Cook and other putative class members had or have indefinite, lengthy and ongoing working relationships with Farm Bureau and received (and/or continue to receive) promotions and advanced (and/or continue to advance) along career paths as is typical for employees. For instance, Cook worked for Farm Bureau for 41 total years. He began as an agent in Chickasaw County in 1976. He served in that capacity until he was promoted to Agency Manager upon Evans Dendy's retirement in 1978. He served as Agency Manger until he was terminated in August of 2017. Similarly, according to their LinkedIn and/or Facebook profiles,:

     a. Henry Hamill, VP of Sales for Mississippi Farm Bureau, has worked for Farm Bureau for 28 total years. He began as an agent in Brookhaven, Mississippi in 1990 and accepted a "promotion to become Agency Manager for Farm Bureau in Alcorn County" in October 2008. In May 2011, he was promoted again to become a VP of Sales. "In this position, [he is] responsible for managing roughly 320 agents and 10 staff members. [He is] also responsible for all the marketing efforts such as advertising and sales promotions."

     b. John Thomas, Director of Agency Development at Mississippi Farm Bureau Casualty Insurance Company, has worked form Farm Bureau for 34 years. He worked as an agent for 22 years, from August 1984 to August 2006. He was then promoted to Agency Manager where he worked until April 2011. In April 2011, he accepted another promotion to District Sales Manager. He worked in that position until January 2016 when he accepted a Farm Bureau promotion to Director of Agency Development.

     c. Brian Hicks, a District Sales Manager for Southern Farm Bureau Life Insurance Company in north Mississippi, has worked for Farm Bureau for 10 years. He worked as an agent in Tupelo, Mississippi from January 2008 to September 2012. He was then promoted to a District Sales Manager for Southern Farm Bureau Life Insurance Company in October 2012.

17

    d.  Barry Patton, a District Sales Manager for Mississippi Farm Bureau, has worked in that capacity since 2002.  He manages Farm Bureau agents, including George "Bubba" Cole who is a defendant in a Title VII action filed in the United States District for the Northern District of Mississippi (Civil Action No. 1:17cv219).

    e.  Bill Hite has been an Agency Manager at Farm Bureau in Washington County for over 26 years (since December 1991).

    f.  Brian Street, an Agency Manager for Farm Bureau in Cleveland, Mississippi, has been employed by Farm Bureau for nearly 6 years.  He was hired as an agent in Sunflower County.  He served as an agent from July 2012 until he was promoted to Agency Manger (where he still serves) in June, 2017.

    g.  Judd Williams, an Agency Manager for Farm Bureau in Indianola, Mississippi, has worked for Farm Bureau for 12 years.  He has worked as an agent since March 2006 and as an Agency Manager since July 2011.

See Exhibit "4"; see also LinkedIn and/or Facebook profile excerpts, attached hereto respectively and incorporated by reference as Exhibits "5" – "10".

    77.  Farm Bureau expected and encouraged "continuous service" by Cook and other putative class members which is typical of employment relationships and not independent contractor relationships.  This is evidenced, *inter alia*, by the fact that it tied its compensation to Cook and other putative class members to "length of continuous service as Agency Manager."  See Exhibit "1" at p. 7, ¶ 6.B. and Exhibit "2" at p. 8, ¶6.B. Its expectation was and is that Agency Managers work for it for more than 5 years.  See, e.g., Exhibit "1" at p. 7, ¶ 6.B. and Exhibit "2" at p. 8, ¶6.B. (providing 0% percentage of qualifying commissions to be paid for continuous length of service of less than 5 years and 50%+ for continuous length of service of at least 5 years); see also Exhibit "1" at pp. 6-7, ¶¶ 6.A., D. and H. and Exhibit "2" at pp. 7-8, pp. 6-7, ¶¶ 6.A., D. and H. (tying other benefits to length of continuous service of at least 5 years).

78. Cook and other putative class members worked exclusively for Farm Bureau for years and even decades. <u>See</u>, <u>e.g.</u>, Exhibits "1," "8," "9," and "10."

79. The primary job duties of Cook and the putative class members include and/or included:

- "provid[ing] the creative selling, professional counseling, and prompt and skillful service essential to the creation and maintenance of successful multiple-line companies and agencies" for Farm Bureau;

- personally soliciting and servicing all lines of business that the Farm Bureau companies offer;

- soliciting and servicing all lines of business that the Farm Bureau companies offer through Farm Bureau-appointed agents;

- assisting Farm Bureau-appointed agents for proficiency in the sale and service of Farm Bureau's insurance lines;

- assigning accounts to agents as prescribed by Farm Bureau rules and guidelines;

- submitting to government by Farm Bureau guidelines and instructions contained in its rate books, manuals, and underwriting guidelines; and

- performing claim adjustment and all other services for Farm Bureau's insureds in the manners detailed in Farm Bureau's guidelines, instructions, and Agents' Manuals.

<u>See</u>, <u>e.g.</u>, Exhibits "1" and "2."

80. Cook and the other putative class members solicited, sold and serviced, personally and through Farm Bureau-appointed agents, insurance policies exclusively from Farm Bureau. <u>See</u>, <u>e.g.</u>, Exhibit "1" at p. 1, ¶ 2.B. They were prohibited from soliciting, selling and/or servicing insurance from other companies while working for Farm Bureau unless they obtained prior written consent and authorization to do so. <u>See</u>, <u>e.g.</u>, Exhibit "1" at p. 2, ¶ 2.E.

81. Alternatively, Farm Bureau limited and controlled the policies, products, and services Cook and the other putative class members could solicit, sell and/or service, personally or through Farm Bureau-appointed agents, and only a select group of Agency Managers or agents were allowed to write Blue Cross Blue Shield Health Insurance policies. See, e.g., Exhibits "1" and "2."

82. Cook and the other putative class members were required to consider and treat any money they received or collected as Farm Bureau property and were required to remit all such money "at once" to Farm Bureau's state office without deduction for commission, payment or claim of any kind. See, e.g., Exhibit "1" at p. 1, ¶ 2.C. Alternatively, Farm Bureau customers made payments directly to Farm Bureau for purchased services and products. They did not pay Cook or others similarly situated for the services and products they offered.

83. Cook and the other putative class members were (and are) prohibited from representing any insurance company, other than a Farm Bureau insurance company, unless they first obtained Farm Bureau's written consent to do so. See, e.g., Exhibit "1" at p. 2, ¶ 2.E.

84. Farm Bureau prohibited Cook and the other putative class members from claiming any right to any of the books of business they wrote for Farm Bureau and expressly stated that the entire books of business written by their Agency Managers, together with all rights of renewal or expiration thereof, "shall be and remain the sole and exclusive property of the [Farm Bureau] Companies." See, e.g., Exhibit "1" at p. 2, ¶ 2.L.

85. Cook and the other putative class members were required to surrender their entire books of business to Farm Bureau upon their termination or departure, whether voluntary or involuntary, from Farm Bureau. See, e.g., Exhibit "1" at p. 2, ¶ 2.L.

86. Farm Bureau claimed ownership of and prohibited Cook and other putative class members from claiming ownership of or any right to any information regarding persons to whom they sold or serviced insurance including "all information, names, addresses and ages of policy holders and contract holders." <u>See</u>, <u>e.g.</u>, Exhibit "1" at pp. 2-3, ¶ 2.L.

87. Farm Bureau claimed ownership of and prohibited Cook and other putative class members from claiming ownership of or any right to "all information on any media form, including, but not limited to, memoranda, computer tapes, computer disks, computer printouts or manually produced records" whether furnished by Farm Bureau or purchased by Cook and the other putative class members. <u>See</u>, <u>e.g.</u>, Exhibit "1" at p. 3, ¶ 2.L. Farm Bureau claimed sole and exclusive ownership and right to such information and things and prohibited Cook and other putative class members from copying, duplicating or reproducing any such information or thing without its prior written consent. <u>See</u>, <u>e.g.</u>, Exhibit "1" at p. 3, ¶ 2.L. It also required Cook and the other putative class members to surrender all such items at the time of their separation from Farm Bureau (even if Cook and/or the putative class members had themselves purchased the items or information). <u>See</u>, <u>e.g.</u>, p. 3, ¶ 2.L.

88. Farm Bureau required Cook and others similarly situated to pay commissions to their predecessors for prior they rendered to Farm Bureau. <u>See</u>, <u>e.g.</u>, Exhibit "1" at p. 3, ¶ 2.M.

89. Farm Bureau required Cook and other putative class members to authorize it to print their names and to utilize their electronic signatures on policy declarations and other documents. <u>See</u>, <u>e.g.</u>, Exhibit "1" at p. 3, ¶ 2.N.

90. Farm Bureau expressly limited the authority of Cook and other putative class members in a number of ways as detailed in its Agency Manager's Contracts. <u>See</u>, <u>e.g.</u>, Exhibits "1" and "2."

91. Farm Bureau controlled the manner and method of payment to Cook and other putative class members. For example, it retained "the right to withhold payment of any or all compensation due hereunder for a period of time sufficient to give the [Farm Bureau] Companies the opportunity to determine the existence and amount of any indebtedness due, or claimed to be due, from You [Cook and other putative class members] to the Companies, to any Farm Bureau organization, or to other companies." <u>See</u> Exhibit "1" at p. 4, ¶4.A. and Exhibit "2" at p. 5, ¶ 4.A. Likewise, it refused to recognize commissions as due and payable to Cook and other putative class members on any policy until said policy was issued and delivered to the insured and it received the first premium in its home office. <u>See</u> Exhibit "1" at p. 5, ¶ 4.C. and Exhibit "2" at p. 6, ¶ 4.C. It also reserved unto itself the exclusive right to fix the new and renewal commissions and to change those commissions unilaterally and at any time upon its issuance of commission schedules. <u>See</u> Exhibit "1" at p. 9, ¶ 7. and Exhibit "2" at p. 10, ¶ 7.

92. Farm Bureau controlled the hiring, firing, assignment or reassignment, and commission rates of Cook and other similarly situated misclassified Agency Managers. It prohibited them from assigning any of their rights to third parties.

93. Farm Bureau set and/or closely monitored and effectively controlled the work and vacation schedules for Cook and other similarly situated misclassified insurance Agency Managers. It required them submit to regular evaluations where they were evaluated on

production, leadership, manpower, agency development and performance, communication and business management. See, e.g., Exhibit "3."

94. The Agency Manager Evaluations which Farm Bureau performed (and/or continues to perform) on Cook and other similarly situated Agency Mangers are clearly indicative of an employee classification and not an independent contractor classification. For example, the stated primary purpose for the evaluations is to aid Farm Bureau in producing high performance in its Agency Managers as it strives to meet individual and corporate goals. See Exhibit "3."

95. Farm Bureau keeps personnel records on its Agency Mangers and keeps reports of their evaluations in their files. See Exhibit "3."

96. Additionally, Farm Bureau regularly evaluates and grades each Agency Manager on his or her:

- establishment and pursuance of agency goals and objectives consistent with its own goals and objectives;

- ability to promote empowerment of responsibilities and accountability to its "Career Agents;"[2]

- provision of "praise, recognition, and rewards for effective 'Career Agent' and Agency performance;"

- ability to "consistently and actively recruit[s] qualified candidates and maintain[s] a full staff of skilled 'Career Agents'."

- Effectiveness in providing "technical one-on-one training while instilling basic sales skills with 'Career Agents';"

- utilization of his or her agency's website to accomplish established Farm Bureau goals and objectives;

- enhancement of "Career Agent" opportunities through his or her agency's activities;

---

[2] Farm Bureau's repeated reference to "Career Agents" in the evaluation form it uses to review and evaluate the performance of its Agency Managers is, itself, indicative of an employment relationship rather than an independent contractor relationship.

23

- effectiveness in "actively monitor[ing] and improve[ing] [his or her] Agency Website;"

- monitoring of its County Review Program;

- achievement of established property and casualty goals and objectives;

- achievement of established life and health goals and objectives;

- provision of "relevant information about Company [i.e., Farm Bureau] goals and objectives, decisions, plans and events to all appropriate members of the Agency;"

- provision to "Career Agents" of "the necessary tools, training and support to meet their expectations including a professional work environment;"

- ability to listen to "Career Agents'" concerns and provide effective and helpful solutions;

- ability to monitor "the financial status of his/her insurance account at all times;" and

- ability to stay "aware of the general financial condition of 'Career Agents' as well as the County Farm Bureau at all times."

See Exhibit "3."

97.  The following comments and words, *inter alia*, that Cook's District Sales Manager used with regard to his January 26, 2017 review and evaluation of Cook indicate that both he and Farm Bureau considered Cook an employee, rather than an independent contractor, who they could require to run the Farm Bureau Chickasaw County Agency in the ways that they saw fit:

- "Goals and the pursuit of them are not consistent with **Company** expectation;"

- "Don does not maintain a qualified list of candidates and appears to be spending little energy to recruit a qualified candidate to replace Tracy Whitt;"

- "There is no plan in place to reward high achievement;"

- "Don **must** devote more time to training agents on day to day operations and sales skills;"

- "Don **must** stay involved in personal production to stay sharp and meet personal goals;"

- "Don **must** develop a marketing strategy to reach potential customers and to change the image of FB in Chickasaw County;"

- "Don **must** work harder to network in the community to help recruit agents and retain business;"

- "Website has not been upgraded;"

- "Don **must** get involved with agents to ensure adequate goals and progress to achieve them;"

- "Chickasaw did not meet minimum review requirements;"

- "Don **must** create a positive work environment and provide the support and expectation required to be successful;"

- "Don **must** be present to support and help his agents;"

- "Don **must** be more active with veteran and new agents to improve production in Chickasaw;"

- "A new agent is **necessary** to replace Tracy Whitt and a workable marketing plan **must** be developed."

<u>See</u> Exhibit "3."

98. Farm Bureau retained the right to discipline Agency Managers for not following its company rules.

99. Farm Bureau tracked the days and time its Agency Managers worked. It set and/or controlled work hours and/or required its Agency Managers to sign out when leaving their offices.

100. Farm Bureau instructed its Agency Managers regarding when, where and how they were to perform their work. It required its Agency Managers to conduct a certain number of reviews per year.

101. Another example of the control Farm Bureau exercised (and/or exercises) over Cook and other putative class members is seen in Farm Bureau's audit authority. It required Cook and other putative class members to provide it with access to their books,

accounts and financial records.  See Exhibit "1" at p. 5, ¶ 4.D. and Exhibit "2" at p. 6, ¶ 4.D.

102.  Farm Bureau required Cook and other putative class members to meet company sales quotas.  See, e.g., Exhibit "2" at p. 10, ¶ 7.B. (where Farm Bureau reserved unto itself the sole "right to specify sales production results which **must** be achieved during a specified period of time" in order to receive or continue to receive annual base commissions).

103.  Farm Bureau required Cook and other putative class members to take continuing education on business ethics through its company-based system.

104.  Farm Bureau required Cook and other putative class members to enter into non-compete and/or non-solicitation agreements which are typical in employment relationships but not in independent contractor relationships.  See Exhibit "1" at p. 8, ¶ 6.H. and Exhibit "2" at p. 9, ¶ 6.H.

105.  Farm Bureau required Cook and other putative class members to adhere to its code of conduct and its requirements regarding work times, office locations, dress code, mandatory production reports, district meetings, and state meetings.  It determined the location of branch offices from which Cook and other putative class members worked and provided the physical facilities, requirements and tools for their work and regulated their behavior in its facilities.

106.  Farm Bureau monitored computer usage (including information stored, deletions, website usage, search history, and email correspondence) by Cook and other putative class members and retained authority to block websites at its own discretion.

107. Farm Bureau controlled signage, advertising and promotions utilized by Cook and other putative class members. If Cook and/or the others wished to advertise and/or market, they were required to have their advertisements and/or marketing materials approved by Farm Bureau.

108. Similarly, Farm Bureau issued business cards to Cook and other putative class members with its name and logo which identified them as agents and/or Agency Managers for Farm Bureau. Alternatively, Farm Bureau required Cook and other putative class members to acquire business cards with its name and logo which identified them as insurance agents and/or Agency Managers for Farm Bureau. Additionally, Farm Bureau provided Cook and other putative class members with Farm Bureau email addresses.

109. Farm Bureau retained the right to unilaterally fire its Agency Managers without their consent, authorization or approval.

110. Farm Bureau required Cook and other similarly situated Agency Managers to comply with its document retention policy and requirements.

111. Farm Bureau prohibited Cook and other similarly situated Agency Managers from writing, or allowing agents in their offices to write, property and casualty insurance across county lines without its prior approval.

112. Farm Bureau discouraged its Agency Mangers from incorporating and required them to immediately (within 10 days) notify it of any legal change in their professional status to a corporation, LLC, or other entity. See, e.g., Exhibit "1" at p. 3, ¶ 2.P.

27

113.  Farm Bureau required its Agency Mangers to sell and collect Farm Bureau Federation Memberships to customers as a prerequisite to selling them insurance products and/or services.  It required them to call customers to collect past due federation memberships for Farm Bureau.

114.  Cook and other misclassified Agency Managers frequently and routinely worked over 8-hour work days and over 40 hours per week.

115.  Cook and other misclassified Agency Managers are and/or were nonexempt Farm Bureau employees.

116.  Farm Bureau failed to make payroll tax or other withholdings from monies paid to Plaintiffs and other similarly situated insurance agents.

117.  Farm Bureau failed to pay the 7.65% FICA contributions it owed on behalf of each of its Agents.

118.  Farm Bureau illegally and/or wrongfully classified their insurance agents, including Cook, as independent contractors; however, they were actually employees as that term is defined by the FSLA, the FICA, the IRS and relevant case law.

119.  Farm Bureau's mischaracterization of Cook and other similarly situated insurance Agency Managers as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Farm Bureau and these Agency Managers, and the attendant deprivation of substantial rights and benefits of employment, including the refusal to pay overtime wages as required by the FSLA and the refusal or failure to pay required FICA contributions on behalf of each of its Agency Managers, are part of an on-going unlawful practice by Farm Bureau which this Court should enjoin.

## CAUSES OF ACTION

### COUNT I - VIOLATION OF 29 U.S.C. § 207

120.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

121.  Farm Bureau's practice of failing to pay Cook and other Agency Mangers similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA.  See 29 U.S.C. § 207(a)(1).

122.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its employees are employed are applicable to Farm Bureau or Cook and other similarly situated Agency Mangers.

123.  Cook and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 29 U.S.C. § 207.

### COUNT II - VIOLATION OF 29 U.S.C. § 211(c)

124.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

125.  Farm Bureau failed to keep adequate records of the work hours and pay of Cook and other similarly situated Agency Managers in violation of the FSLA.  See 29 U.S.C. § 211(c).

126.  Cook and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 29 U.S.C. § 211(c).

### COUNT III - VIOLATION OF 26 U.S.C. § 3111

127.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

Farm Bureau's practice of failing to pay the FICA taxes imposed upon it for each of its Agents violates FICA.  See 26 U.S.C. § 3111(a) and (b).

128. Cook and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 26 U.S.C. § 3111(a) and (b).

## COUNT IV - VIOLATION OF 26 U.S.C. § 3102

129. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

130. Farm Bureau failed to collect FICA taxes for its Agency Managers, by deducting the amounts of the taxes from their wages as and when paid, in violation of the FICA.  See 26 U.S.C. § 3102(a).

131. Farm Bureau is liable for the payment of the taxes it failed to deduct from its Agency Managers' wages as and when paid.  See 26 U.S.C. § 3102(b).

132. Cook and others similarly situated were damaged in an amount to be proved at trial as a result of Farm Bureau's violation of 26 U.S.C. § 3102.

## WILLFULNESS

133. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

134. Farm Bureau's failure to pay Cook and other similarly situated Agency Managers overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.  Likewise, its failures to withhold Cook's and others similarly situated Agency Managers' portions of FICA taxes and to pay its portion of each of its Agency Managers' FICA taxes were willful and were not based on good faith and reasonable belief that its conduct complied with the FICA.

135. Farm Bureau was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  It was aware of its FICA obligations under 26 U.S.C. §§ 3102 and 3111.

136. Farm Bureau was aware of the specific job duties of its Agency Managers and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay or any applicable exemption under the FICA.

137. Farm Bureau knew that the position of insurance Agency Manager as the job was intended and was performed by Cook and other similarly situated Agency Managers was consistent with an employment relationship under the FLSA, the FICA, the IRS Code and controlling case law and that it was improper to classify (or, rather, misclassify) the Agency Managers as independent contractors.

138. Farm Bureau knew or showed reckless disregard for the proper classification of the Cook and other similarly situated Agency Managers when it classified them as exempt independent contractors.

139. Farm Bureau willfully misclassified the positions of Cook and other similarly situated Agency Managers as exempt.

## DAMAGES AND ATTORNEY'S FEES

140. Cook and other similarly situated Agency Managers are entitled to a judicial declaration that they were and/or are Farm Bureau employees. They are entitled to a judicial declaration that they were not and are not independent contractors despite Farm Bureau's misclassifying them as such. They are entitled to judicial declarations that Farm Bureau's acts, policies, practices and procedures complained of herein violated provisions of the FLSA and the FICA.

141. Cook and others similarly situated are entitled to recover their unpaid overtime compensation.

142. Cook and others similarly situated are entitled to recover the portion of FICA taxes they paid which should have been paid by Farm Bureau.

143. Cook and others similarly situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages. See 29 U.S.C. § 216(b).

144. Cook and others similarly situated are entitled to recover their attorney's fees and costs. See 29 U.S.C. § 216(b).

145. Cook and others similarly situated are entitled to pre- and post-judgment interest.

## JURY DEMAND

146. Cook demands trial by jury.

## PRAYER FOR RELIEF

147. For these reasons, Cook respectfully requests the following relief for himself and on behalf of all members of the Class Action, and all other similarly situated individuals:

a. That the Court certify the putative class named in this Complaint as an opt-in collective and class action under 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure and enter an order allowing this action to proceed as a collective and class action under said authorities;

b. That the Court declare the rights and duties of the parties consistent with the relief sought herein;

c. That the Court issue a declaratory judgment that Farm Bureau's acts, policies, practices, and procedures complained of herein violated provisions of the FLSA and the FICA;

d. That the Court enjoin Farm Bureau from committing further violation of the FLSA and the FICA;

e. That the Court award Cook and the other putative class members overtime compensation for all hours worked over 40 hours in a workweek at the applicable time-and-a-half rate;

f. That the Court award Cook and the other putative class members equal amounts of all owed wages as liquidated damages as allowed under the FLSA;

32

g.  That the Court award Cook and the other putative class members the amounts necessary to reimburse them for the portion of FICA taxes which they paid but which should have been paid by Farm Bureau;

h.  That the Court award Cook and the other putative class members reasonable attorney's fees, costs, pre-judgment interest, post-judgment interest and expenses;

i.  That the Court award appropriate incentive awards for any class representatives;

j.  That the Court award Cook and the putative class members such additional relief as the interests of justice may require; and

k.  That a jury be impaneled to try this case.

Respectfully submitted, this 26th day of April, 2018.

> **MEGAN BRITT, BRETT HAWKINS, STEVE HARBOUR, JASON NORMAN, BRIAN MILEY, CLINT BUCKLEY, JASON BAKER, and CHRIS CARNEY**
>
> By:
>
> s/ S. Ray Hill, III_____
> S. RAY HILL, III, MSB # 100088
> DANA G. DEARMAN, MSB # 8681
> *Attorneys for Plaintiffs*

**OF COUNSEL:**

CLAYTON O'DONNELL, PLLC
P. O. Drawer 676
Oxford, MS 38655
Tel. (662) 234-0900
rhill@claytonodonnell.com

P. O. Box 755
Tupelo, MS 38802-0755
Tel. (662) 620-7938
ddearman@claytonodonnell.com